## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE MASCARINI, LOURDES COSTOSO, LEVI RAMBLER, JENNA WALTERS and MORGAN WITMAN | : : : : | CIVIL ACTION NO. 1:10-CV-1546 (Judge Conner) |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| QUALITY EMPLOYMENT SERVICES & TRAINING (a.k.a. QUEST, INC.), QUEST, Inc. BOARD OF DIRECTORS, PENELOPE SAMUELSON, JOSEPH KRISTOBAK, VERNA MORRIS, HOLLIE MANWILLER, JOSEPH HYLTON and MICHAEL WEIDMAN | : : : : : : : : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a civil action filed by plaintiffs Alice Macarini, Lourdes Costoso, Levi Rambler, Jenna Walters, and Morgan Witman alleging numerous violations of federal and state law following the termination of their employment with defendant Quality Employment Services and Training (a.k.a. Quest, Inc.) ("Quest"). Presently before the court is a partial motion (Doc. 12) to dismiss certain state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), a motion to strike pursuant to Rule 12(f), and a motion for a more definite statement pursuant to Rule 12(e). For the reasons that follow, the court will deny the motion in its entirety.

# I.    <u>Background</u>[1]

This case arises out of numerous incidents that occurred between 2007 and 2010 while plaintiffs were employed at Quest.  Plaintiff Alice Mascarini ("Mascarini") began employment with Quest in 2004 as a Vocational Instructor. (Doc. 8 ¶ 21).  In 2007, Quest promoted her to the position of Assistant Director Vocational Services, and in 2008 she served as Interim Director Vocational Services for a period of three months.  (<u>Id.</u>)  Her employment with Quest ended in June 2009. (<u>Id.</u>).  Plaintiff Lourdes Costoso ("Costoso") worked for Quest from January 2008 until May 2009 as a Vocational Instructor, during which period she was directly supervised by Mascarini.  (<u>Id.</u> ¶ 22).  Plaintiff Jenna Walters ("Walters") was employed by Quest as a Programs Specialist from 2008 until April 2009.  (<u>Id.</u> ¶ 25). Plaintiff Morgan Witman ("Witman") worked for Quest for five and one-half years until April 2010, first as a Program Specialist and later as the Director of Specialized Services.  (<u>Id.</u> ¶ 26).  Plaintiff Levi Rambler ("Rambler") was employed by Quest for twenty seven (27) years until his discharge in January 2010.  (<u>Id.</u> ¶ 75).

Defendants are Quest, a vocational rehabilitation facility that provides employment training and sheltered workshops (<u>id.</u> ¶ 12), the Quest Board of

---

[1] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint.  <u>See</u> <u>infra</u> Part II.  However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded.  <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009); <u>Santiago v. Warminster Twp.</u>, No. 10-1294, --- F.3d ---, 2010 WL 5071779, at *4 (3d Cir. 2010).

Directors, and the following named managers and supervisors: Penelope Samuelson ("Samuelson"), President or Vice President of the Board of Directors (id. ¶ 14), Joseph Kristoback, President of the Board of Directors (id. ¶ 15), Verna Morris ("Morris"), Executive Director of Quest (id. ¶ 16), Hollie Manwiller, Interim Executive Director or Chief Financial Officer of Quest (id. ¶ 17), Joseph Hylton ("Hylton"), Director of Vocational Services for Quest (id. ¶ 18), and Michael Weidman ("Weidman"), Maintenance Supervisor for Quest (collectively "the Quest defendants"). (Id. ¶ 19).

In 2007, Mascarini reported to the Board of Directors, and then President of the Board, defendant Kristobak, that an intimate relationship between Weidman and the current Executive Director was affecting the management of Quest. (Id. ¶ 27). She alleged that Weidman received preferential treatment and favoritism and that management tolerated the inappropriate conduct and harassment engaged in by him. (Id.) Mascarini claims that Weidman's behavior included "rude and offensive sexually derogatory name-calling," such as "Bitch" and "Whore," directed at women including her and Costoso. (Id.)

After reporting the conduct, Mascarini avers that Weidman retaliated against her. (Id. ¶ 28). Weidman purportedly threatened Mascarini, stating "That bitch will pay" and engaged in daily profane name-calling and threats, as well as refusing to perform his maintenance duties for her. (Id. ¶¶ 28-29). Mascarini asserts that she again reported this behavior to the Board of Directors, President Kristobak and

Interim Executive Director Manwiller, but no action was taken to remedy the behavior.  (Id. ¶ 30).

In October or November of 2008, after defendant Morris assumed the position of Executive Director of Quest, Mascarini reported to her that Weidman exhibited an uncontrollable temper and rage and that he continued to engage in profane name-calling.  (Id. ¶ 32).  Mascarini further reported that Weidman assaulted a participant of the vocational rehabilitation at Quest with a flashlight.  (Id.)  According to Mascarini, Morris took no action against Weidman either with respect to his behavior towards Mascarini, or the alleged assault, the later of which Mascarini asserts, Quest was required to report to the Lebanon County Mental Health/Mental Retardation Program and the Pennsylvania Department of Public Welfare.  (Id. ¶¶ 33-35).  Rather than addressing the situation, the Quest defendants threatened Mascarini's employment if she continued to complain to the Board of Directors about Weidman's behavior.  (Id. ¶ 36).  She states that the Quest defendants instituted a "hands off" policy with respect to Weidman.  (Id.)

Subsequent to Mascarini reporting to Morris, she avers that Weidman's conduct intensified, becoming violent and physically threatening: Weidman would angrily pound on Mascarini's desk, throw tools, and refer to her as "bitch" and "whore" daily.  (Id. ¶ 38).  Mascarini also claims she observed inappropriate name-calling and harassment by Weidman directed towards other women, specifically plaintiff Costoso, and reported his behavior.  (Id. ¶ 39).  Plaintiffs contend that Costoso and other employees similarly reported Weidman's threats against

Mascarini.  (Id. ¶ 40).  Plaintiffs aver the Quest defendants continued to ignore the

complaints, tolerating Weidman's conduct.  (Id. ¶¶ 39, 40).

Due to the working conditions, Mascarini tendered her resignation to Quest

in March 2009, but she subsequently withdrew her resignation after receiving

promises from Morris that conditions would change and that there would be no

contact between her and Weidman.  (Id. ¶ 43).  In May 2009, Quest discharged

plaintiff Costoso without seeking the input of Mascarini, Costoso's direct supervisor.

(Id. ¶ 47).  Mascarini voiced her disagreement with the decision to the Quest

defendants.  (Id.).  Mascarini was subsequently shunned by the directors and

managers who would not communicate with her.  (Id. ¶ 48).  Instead, Manwiller,

Hylton, Morris and Weidman allegedly made false accusations that Mascarini

sabotaged work orders and supposedly reported the accusations to staff,

participants of Quest's rehabilitation and vocational training, and contracted

vendors.  (Id. ¶ 49).  Mascarini claims she suffered anxiety, depression and emotion

distress as a result.  (Id. ¶ 49).

The hostile behavior culminated on June 12, 2009, with an alleged physical

assault by Weidman.  Mascarini alleges that while on the dock at the Quest

warehouse, Weidman lunged at her, raised his arm and hand and threatened: "I

outta back-hand you off the fuckin dock."  (Id. ¶ 50).  Mascarini immediately

reported the incident to the defendant managers who, she claims, did nothing.  (Id.

¶ 51).  On June 15, 2009, Mascarini claims she submitted a follow-up complaint to

Morris and her direct supervisor Hylton, as well as reporting Weidman's conduct to

Lebanon County Mental Health/Mental Retardation Program. (Id. ¶ 52). On June 18, 2009, Mascarini informed Morris she could no longer work for Quest if they took no action to remedy the harassment or protect her. (Id. ¶ 53). Mascarini alleges that only after she reported Weidman's conduct to Lebanon County did Morris initiate an investigation. (Id. ¶ 54). Quest tasked Programs Specialist (plaintiff) Walters with the investigation to be conducted in conjunction with Lebanon County personnel. (Id. ¶ 55). The result of the investigation, plaintiffs claim, was a finding that Weidman was physically abusive, and an admonishment from the Department of Public Welfare for Quest's failure to follow statutory reporting procedures. (Id. ¶¶ 54-55).

On June 25, 2009, Mascarini received written notice from Morris that she had been terminated by Quest. (Id. ¶ 57). An Unemployment Compensation Board of Review concluded that Mascarini was entitled to benefits because Mascarini "had a reasonable fear for her safety" and "has shown cause of a necessitous and compelling nature for quitting." (Id. ¶ 58; Id. Ex. B). On October 8, 2009, Mascarini filed charges of discrimination with the Pennsylvania Human Relations Commission ("PHRC"), and the Equal Employment Opportunity Commission ("EEOC"). (Id. Ex. D). The EEOC issued Mascarini a notice of right to sue on July 19, 2010. (Id. Ex. G).

Plaintiff Costoso, was directly supervised by Mascarini. She is a "black-skinned Hispanic female" who, plaintiffs state, was the sole Hispanic employee in the Vocational Unit at Quest. (Id. ¶¶ 22, 23). During her time at Quest, plaintiffs

aver that Costoso was known as "the Black lady on the floor." (<u>Id.</u> ¶ 23). Plaintiffs contend that Weidman referred to Costoso as "fat assed black bitch" and regularly mocked her slight Hispanic accent. (<u>Id.</u> ¶ 38). Mascarini purportedly reported this behavior, but again the Quest defendants did nothing. (<u>Id.</u> ¶ 39). Plaintiffs assert that the behavior was perpetuated when defendant Hylton became Director of Vocational Services: he too referred to Costoso as a "fat assed black bitch" and mocked her accent as well as engaging in other name-calling and profane sexual references to women and minorities. (<u>Id.</u> ¶¶ 41-42).

According to the complaint, on May 1, 2009, Hylton accused Costoso of psychologically abusing a program participant. (<u>Id.</u> ¶ 44). Plaintiffs further aver that Hylton spread the accusation to all staff and participants at Quest, as well as to Samuelson, Kristobak, Morris, and Manwiller, and others in the community. (<u>Id.</u> ¶¶ 61, 62, 63). Plaintiffs assert that this accusation was false. (<u>Id.</u> ¶¶ 44, 46).

Plaintiff Walters, who as Program Specialist was tasked with investigating allegations of abuse towards participants in the vocational training (<u>id.</u> ¶ 25), was assigned to investigate the allegation. (<u>Id.</u> ¶ 45). Plaintiffs aver that defendant Manwiller instructed Walters to make a finding of abuse against Costoso despite Walters' contrary conclusion at the end of her investigation. (<u>Id.</u>) As a result, on May 4, 2009, Quest fired Costoso on grounds of program participant abuse. (<u>Id.</u> ¶ 46). When Costoso sought unemployment compensation, an unemployment compensation board referee decision concluded that "[Costoso] did not engage in any verbal abuse with the client." (<u>Id.</u> Ex. C). Costoso filed charges of

discrimination against Quest with the PHRC and the EEOC on October 8, 2009.  (Id. Ex. E).  The EEOC issued her notice of right to sue on July 19, 2010.  (Id. Ex. G).

Walters and Witman testified under subpoena at the Unemployment Compensations Board hearings of Mascarini and Costoso.  (Id. ¶¶ 68, 69).  At the Unemployment compensation referee hearing for Mascarini, she testified that a month after her discharge she encountered Rambler; Rambler informed her that Weidman had been discharged from Quest.  (Id. ¶¶ 59, 73).

Subsequent to the hearing, plaintiffs aver that Manwiller, Morris, and Hylton accused Rambler of wrongdoing, lying about his time cards and refusing to do vocational work and allegedly published these accusations to Quest staff.  (Id. ¶ 75).  Plaintiffs assert that these allegations were false.  (Id. ¶ 79).  One month later, on January 27, 2010, Quest discharged Rambler, stating that his position was eliminated for economic reasons.  (Id. ¶ 75; id. Ex. F).  Plaintiffs claim that Rambler, age 61 and the most senior employee of Quest, was not offered alternative available work, but was instead replaced by a younger worker.  (Id. ¶¶ 75, 76).  Rambler received his notice of right to sue from the EEOC on July 19, 2010.  (Id. Ex. G).

Plaintiffs further allege that beginning in September 2009, when Walters was subpoenaed and testified at Costoso's hearing, Manwiller, Samuelson, Kristobak, and Morris ceased business communications with Witman, excluded her from Board meetings and removed her work duties.  (Id. ¶ 70).  Then, in February 2010, Walters and Witman cooperated in Quest's internal investigation of the charges of discrimination filed with the PHRC and EEOC by Mascarini and Costoso.  (Id. ¶ 82).

8

Plaintiffs allege that they truthfully answered questions, stating to counsel that the Quest defendants failed to remedy known discrimination and harassment in the workplace. (Id.) Subsequently, plaintiffs aver that Morris, Manwiller, Hylton, Kristobak, and Samuelson, published falsehoods about Walters and Witman to the Quest staff, contracted vendors, and others in the community. (Id. ¶ 86). They claim that the Quest defendants informed other that Walters and Witman were untrustworthy and to "watch your back." (Id. ¶ 84). On April 8, 2010, both Walters and Witman were discharged, allegedly for economic reasons. (Id. ¶ Ex. F). Plaintiffs aver that they were actually discharged for participating in the unemployment compensation hearings and EEOC investigation and based on the falsehoods spread by defendants. (Id. ¶¶ 84, 139, 141-144). Walters and Witman were issued notices of right to sue from the EEOC on July 19, 2010. (Id. Ex. G).

Plaintiffs originally instituted this action in the Court of Common Pleas of Lebanon County. The Quest defendants removed the matter to this court on July 26, 2010 (see Doc. 1) and filed a motion to dismiss on August 2, 2010. (Doc. 3). On August 17, 2010 the court granted plaintiffs' concurred-in motion to file an amended complaint. (Doc. 6). Plaintiffs filed their amended complaint (Doc. 8) on August 27, 2010, which prompted the court to dismiss the then-pending motion (Doc. 3) to dismiss as moot. (See Doc. 11). In Plaintiffs' amended complaint plaintiffs allege nine causes of action: (1) violation of 42 U.S.C. § 1981; (2) violation of Title VII, 42 U.S.C. § 2000e; (3) violation of the Age Discrimination and Employment Act; (4) violation of the Pennsylvania Human Relations Act; (5) defamation; (6) assault; (7)

9

intentional infliction of emotional distress; (8) failure to supervise; and (9) wrongful discharge.

On August 31, 2010, the Quest defendants filed the instant partial motion (Doc. 12) to dismiss, motion to strike, and motion for a more definite statement. The Quest defendants allege that the complaint is a "mix of allegations, impertinent material and indecipherable claims" that "fails to identify what actions or omissions are attributable to the individual defendants" and includes improper material. (<u>Id.</u> ¶¶ 2, 3). They further aver that the complaint is "replete with hyperbole, immaterial, impertinent and scandalous material." (<u>Id.</u> ¶ 5). Finally, the Quest defendants assert that plaintiffs have failed to adequately plead defamation, intentional infliction of emotional distress, and wrongful discharge (counts V, VII, and IX). (<u>Id.</u> ¶¶ 7, 8, 9). The motion has been fully briefed and is now ripe for disposition.

## II. <u>Standard of Review</u>

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted. <u>See</u> Fed. R. Civ. P. 12. Pursuant to Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement of a pleading when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The party moving for a more definite statement "must point out the defects complained of and the details desired." <u>Id.</u>

Under Rule 12(f) the court may strike "any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). District courts have considerable discretion in ruling on a Rule 12(f) motion, and in general, such a motion will be denied unless the allegation have no possible relation to the claims, or will cause substantial prejudice to one of the parties. See Krisa v. Equitable Life Assur. Soc., 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000); see also 5C CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 3d § 1382 (2004) (stating that "there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). Motions to strike are disfavored, and striking an entire pleading is a drastic remedy that should be used sparingly. See Krisa, 109 F. Supp. 2d at 319.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d

170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin,</u>

<u>Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); <u>see also</u> <u>In re</u>

<u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion,

the court must conduct a three-step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, No.

10-1294, --- F.3d ---, 2010 WL 5071779, at *4 (3d Cir. 2010). In the first step, "the

court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u>

(quoting <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)) Next, the factual

and legal elements of a claim should be separated; well-pleaded facts must be

accepted as true, while mere legal conclusions may be disregarded. <u>Id.</u>; <u>see also</u>

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-

pleaded factual allegations have been isolated, the court must determine whether

they are sufficient to show a "plausible claim for relief." <u>Ashcroft v. Iqbal</u>, --- U.S.

---, 129 S. Ct. at 1950 (citing <u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555

(requiring plaintiffs to allege facts sufficient to "raise a right to relief above the

speculative level"). A claim "has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.**    **Discussion**

The court will first address the Quest defendants' motion for a more definite statement and motion to strike pursuant to Federal Rule of Civil Procedure 12(e) and 12(f). The court will then address the Rule 12(b)(6) arguments with respect to plaintiffs' defamation, intentional infliction of emotional distress, and wrongful discharge claims.

**A.**    **Motion for a More Definite Statement and Motion to Strike**

The Quest defendants combine their arguments for their motion for a more definite statement with their arguments for their motion to strike. They aver that the amended complaint contains redundant, immaterial, impertinent and scandalous matter and that it lacks sufficient detail to allow them to form an Answer. (Doc. 13, at 7.)

The Quest defendants point to five paragraphs of the amended complaint that they believe to be "egregious" averments (see Doc. 13, at 7-10) indicative of vagueness or violative of Rule 12(f). For example, the Quest defendants claim that plaintiffs' assertion that a "hands off" policy existed for Weidman is irrelevant and

13

that reference to Weidman's race "is an obvious attempt to enflame passions." (Doc. 13 at 8). The court cannot agree. A hands off policy towards one employee's ill behavior has implications for the Title VII and failure to supervise claims, and reference to Weidman's race is not irrelevant given the Title VII race discrimination claim.

The Quest defendants also request that the court strike references in the amended complaint to Unemployment Compensation Board of Review Decisions and Orders as well as the documents themselves, which are attached to the amended complaint. (Doc. 13, at 9-10). The Quest defendants aver that the documents may be elicited during discovery and to present the findings in the amended complaint "is exactly the type of pleading Rule 12(f) forbids." (Id.) The court disagrees. Although the Unemployment Compensation Board decisions are not conclusive on the issues raised, they are certainly relevant to plaintiffs claims of retaliation and wrongful discharge, among others. Nor does their inclusion cause substantial prejudice to the defendants of the type a Rule 12(f) is meant to correct, as defendants admit that the documents may be elicited through discovery. As such, their reference and inclusion with the amended complaint does not violate Rule 12(f).

Finally, with respect to the Rule 12(e) request, the court finds the Quest defendants' averment that the complaint lacks sufficient detail somewhat befuddling given the fact that the defendants recite all nine counts of the amended complaint and seek to have the court dismiss three counts. (Doc. 13, at 4-5). The

14

court also notes that the Quest defendants fail to comply with the requirements for a Rule 12(e) motion for a more definite statement. Rule 12(e) requires identification of the pleading's defects and an explanation of the details desired. See Fᴇᴅ. R. Cɪᴠ. P. 12(e). The Quest defendants point to five paragraphs and then conclude that "[w]hile there are other examples, throughout Plaintiffs' Complaint, Defendants include a sample, in the interest of brevity, and because the pleading failures of Plaintiffs' Complaint are manifest." (Doc. 13, at 10). Such a conclusion does not comply with the plain language of Rule 12(e) which requires identification of the defects and a statement of the desired detail. Therefore, the motion to strike/motion for a more definite statement is denied.

**B.** **Defamation**[2]

The Quest defendants assert that plaintiffs (with the exception of plaintiff Costoso, see Doc. 13, at 14) have not pled sufficient facts to support a defamation claim. Defamation under Pennsylvania law is statutorily defined at 42 Pa. Cons. Stat. § 8343 and enumerates seven factors a plaintiff must establish to succeed in a cause of action. Plaintiffs have the burden of proving: (1) the defamatory character of the communication; (2) publication by the defendant; (3) application to the plaintiff; (4) understanding by the recipient of the communication's defamatory meaning; (5) understanding by the recipient that the defamatory meaning is intended to apply to the plaintiff; (6) special harm to the plaintiff from the

---

[2] The court may exercise jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat.

§ 8343(a). The Quest defendants assert that plaintiffs have failed to plead the

defamatory nature of the communications, and to whom the allegedly defamatory

statements were made. (Doc. 13, at 13).

It is for the court to determine in the first instance whether a communication

is capable of a defamatory meaning. See U.S. Healthcare, Inc. v. Blue Cross of

Greater Philadelphia, 898 F.2d 914, 923 (3d Cir. 1990). 'A communication is

considered defamatory if it tends to harm the reputation of another so as to lower

him in the estimation of the community or to deter third persons from associating

or dealing with him,' Purcell v. Ewing, 560 F. Supp. 2d 337, 341 (M.D. Pa. 2008)

(quoting Goralski v. Pizzimenti, 540 A.2d 595, 597-98 (Pa. Commw. Ct. 1988)), or if it

ascribes conduct, character or conditions to an individual that would adversely

affect one's "fitness for the proper conduct of his proper business, trade or

profession." Giordano v. Claudio, 714 F. Supp. 2d 508, 526 (E.D. Pa. 2010) (quoting

Maier v. Maretti, 671 A.2d 701, 704 (Pa. Super. Ct. 1995)). The intended audience of

the communication is significant in the defamatory meaning determination. See

id.; Feldman v. Lafayette Green Condominium Ass'n, 806 A.2d 497, 500 (Pa.

Commw. Ct. 2002) (stating that "the key in determining defamatory meaning is the

effect the statement would produce on its intended audience").

In federal court, a defamation claim need not be pled with the precise

defamatory statements so long as the count provides sufficient notice to the

defendant. See Roskos v. Sugarloaf Tp., 295 F. Supp. 2d 480, 492 (M.D. Pa. 2003);

16

see also Reager v. Williams, No. 3:08cv2035, 2009 WL 3182053, at *5 (M.D. Pa. Sept. 25, 2009) (citing Roskos). Nor must the individual who made the statement be specifically identified if notice pleading standards are satisfied. See Tuman v. Genesis Assocs., 935 F. Supp. 1375, 1391 (E.D. Pa. 1996).

Contrary to the Quest defendants' assertions, plaintiffs have pled the defamatory nature of statements with sufficient specificity under federal pleading standards to put them on notice. In addition, plaintiffs have clearly asserted both the source of the statements and to whom such statements were directed. Plaintiff Mascarini alleges that Manwiller, Hylton, Morris, and Weidman published false accusations to staff, consumers, and vendors of Quest that she sabotaged work orders. (Doc. 8 ¶ 107). Plaintiff Rambler alleges that Manwiller, Morris, Hylton and Executive Assistant Pat Wolfe (not a defendant in the instant action) published false accusations to the staff at Quest that he lied about his time cards and refused to do vocational work. (Id. ¶ 108). Plaintiffs Walters and Witman allege that Morris, Manwiller, Hylton, the Board of Directors, Krisobak, and Samuelson published false accusations to vendors, staff and others in the community that they were untrustworthy and others should watch their backs. (Id. ¶ 109). The court finds all of these statements, *if proven*, to be capable of defamatory meaning in the employment context, given their alleged publication to staff members of Quest and their relation to each plaintiff's fitness or professional conduct. The motion to dismiss the defamation claim is denied.

## C.    Intentional Infliction of Emotional Distress

In Count VII of the amended complaint Mascarini and Costoso bring a claim for intentional infliction of emotional distress ("IIED") against the Quest defendants. To succeed in a cause of action for IIED, they must allege the following elements: (1) the defendants' conduct was intentional or reckless, (2) the defendants' conduct was extreme and outrageous, (3) the defendants' conduct caused emotional distress, and (4) the resultant emotional distress was severe.[3] Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000); Hoy v. Angelone, 691 A.2d 476, 482 (Pa. 1997); see also Brufett v. Warner Commc'ns, Inc., 692 F.2d 910, 914 (3d Cir. 1982); S.F. ex rel. Freeman v. Delaware Valley Sch. Dist., No. 3:08-CV-581, 2008 WL 4680580, at *7 (M.D. Pa. Oct. 20, 2008).

"The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor," Kazatsky v. King David Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987), and 'it is for the court to determine in the first instance' whether the element of outrageousness has been met. Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)). Alleged misconduct must be so extreme and outrageous "as to go beyond all possible bounds of decency and to be

---

[3] The Pennsylvania Supreme Court has not formally adopted the tort of IIED. However, the court has indicated that if it were to recognize such a cause of action, a plaintiff would have to plead and prove these elements. See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000) (citing Restatement (Second) of Torts § 46 (Outrageous Conduct Causing Severe Emotional Distress)).

regarded as atrocious, and utterly intolerable in a civilized society. . . . the recitation

of the facts to an average member of the community would arouse his resentment

against the actor, and lead him to exclaim, 'Outrageous.'" Strickland v. University

of Scranton, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (quoting Small v. Juniata

College, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)) (citations and quotations omitted).

Ultimately, the plaintiffs must provide competent medical evidence to prove

the existence of emotional distress. Kazatsky, 527 A.2d 988, 995 (Pa. 1987).

However, at the motion to dismiss stage, it is sufficient that plaintiffs have alleged

emotional distress. See Hall v. Raech, No. 08-5020, 2009 WL 811503, at *7 (E.D. Pa.

2009) (allowing IIED claim to survive motion to dismiss but stating that plaintiff will

eventually need to present competent medical evidence of emotion distress to

support the claim).

In the employment context it is "extremely rare" for conduct to rise to the

level of outrageousness necessary to support recovery for IIED. See Cox v.

Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (citing Rinehimer v. Luzerne

Cnty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988)). Instances in which

Pennsylvania courts have permitted claims of IIED to proceed in the employment

context include situations where an employer engages in both sexual harassment

and other retaliatory behavior. Id. at 395-96 (citing Bowersox v. P.H. Glatfelter Co.,

677 F. Supp. 307, 311 (M.D. Pa. 1988) (employer sexually harassed plaintiff in

addition to withholding information needed to perform her job, forbade

communication with anyone in the office, refused to speak with her, and followed her at work)).

In the instant matter Mascarini alleges that defendant Weidman threatened and harassed her on a daily basis, referred to her by use of inappropriate and derogatory names, threw tools at her and pounded on her desk. (Doc. 8 ¶¶ 28-29, 38). When Mascarini reported his behavior she alleges the Quest defendants did nothing to stop or correct Weidman's behavior. (Id. ¶¶ 30, 33, 35, 51). It is alleged that the Quest defendants had a "hands off" policy towards Weidman and thus intentionally refused to act to correct his conduct. (Id. ¶ 36). Indeed, conduct escalated to the point of a physical confrontation in which Mascarini avers that Weidman lunged at her, raised his hand and stated "I outta back-hand you off the fuckin dock." (Id. ¶ 50); see also Faust v. Storm, Civ. A. No. 08-cv-4602, 2009 WL 2143546, at *5 (E.D. Pa. July 15, 2009) (denying motion to dismiss IIED claim when plaintiff alleged sexual harassment culminating in a physical altercation involving assault, battery, and false imprisonment).

Plaintiff Costoso alleges racially-based and derogatory name-calling along with the constant mocking of her slight accent, to which the Quest defendants took no action. (Doc. 8 ¶¶ 23, 38, 39, 41-42). She also alleges that the Quest defendants falsely accused her of abusing a client of Quest and that the Quest defendants spread these accusations to staff, other clients, individuals in the community and the Lebanon County Mental Health/Mental Retardation Program. (Id. ¶ 105). Both Mascarini and Costoso aver that as a result as a result of the Quest defendants'

20

conduct, they suffered severe emotional distress for which they have received care and treatment.  (Id. ¶¶ 123-124, 129-130).

Mascarini alleges extreme harassment culminating in a near physical altercation.  Costoso alleges racial and sexual harassment in addition to purportedly false allegations of abuse lodged against her.  At this stage in the litigation, the court finds Mascarini has alleged sufficiently outrageous conduct to state a claim for IIED, and although Costoso's allegations are a bit weaker, the court finds they too are sufficient to survive the motion to dismiss.  The Quest defendants' motion to dismiss the IIED claim is therefore denied.

### D.    Wrongful Discharge

In Count IX of the amended complaint, plaintiffs allege wrongful discharge against Quest.  Quest avers that plaintiffs fail to state a claim under Pennsylvania law.

Under Pennsylvania law there is a strong presumption in favor of at-will employment.  See Geary v. U.S. Steal Corp., 319 A.2d 174 (Pa. 1974).  An employer retains the right to terminate an employee for any reason whatsoever in the absence of a contractual restriction.  Id. at 175.  The right is not absolute, however, and "may be qualified by the dictates of public policy."  Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998).

The public policy exception to Pennsylvania's at-will employment doctrine is a narrow one: an employee "must show a violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social rights, duties and

responsibilities.'" See Hanson v. Gichner Sys. Group, Inc., 831 F. Supp. 403, 406 (M.D. Pa. 1993) (quoting Turner v. Letterkenny Fed. Credit Union, 505 A.2d 259, 261 (Pa. Super. Ct. 1985)) (internal citations and quotations omitted). Courts have found public policy exceptions where employees have been discharged for refusing to submit to a polygraph test, for filing an unemployment compensation claim, and for submitting a worker's compensation claim. See Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511, 515 (Pa. 2005). The exception has also been applied when discharge results from conduct by the employee that is required by law, or when an employee refuses to engage in conduct prohibited by law. See Clark v. Modern Group Ltd., 9 F.3d 321, 328 (3d Cir. 1993). This includes testifying in response to a subpoena. See Russell v. Strick Corp., Civ. A. No. 97-806, 1997 WL 381584, at *6 (E.D. Pa. July 9, 1997) (public policy exception applicable when employee alleged discharge for truthful testimony at worker's compensation hearing in response to subpoena); see also Pro v. Donatucci, 81 F.3d 1283, 1290 (3d Cir. 1996).

In the instant matter defendants allege the public policy exception is inapplicable to the accusations presented in the amended complaint. Quest directs its arguments towards only two plaintiffs—Mascarini and Costoso—therefore, the court will likewise consider the wrongful discharge claim with respect to only these two plaintiffs. Plaintiffs Mascarini and Costoso allege they were discharged for reporting and complaining of illegal discrimination and sexual harassment at Quest. (Doc. 8 ¶ 139). Mascarini further alleges that her discharge was due to complaints to the Quest defendants that they failed to comply with statutory

procedures set forth by the Pennsylvania Department of Public Welfare for reporting and investigating consumer abuse. (Id. ¶ 141). These allegations entail reporting violations of law. At this early procedural juncture, plaintiffs have sufficiently articulated claims for wrongful discharge in violation of public policy.

## IV.   Conclusion

For the foregoing reasons, the motion to strike, motion for a more definite statement, and the partial motion to dismiss are denied.

An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      January 31, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALICE MASCARINI, LOURDES | : | CIVIL ACTION NO. 1:10-CV-1546 |
| COSTOSO, LEVI RAMBLER, JENNA | : | |
| WALTERS and MORGAN WITMAN, | : | (Judge Conner) |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| QUALITY EMPLOYMENT SERVICES | : | |
| & TRAINING (a.k.a. QUEST, INC.), | : | |
| QUEST, Inc. BOARD OF DIRECTORS, | : | |
| PENELOPE SAMUELSON, JOSEPH | : | |
| KRISTOBAK, VERNA MORRIS, | : | |
| HOLLIE MANWILLER, JOSEPH | : | |
| HYLTON and MICHAEL WEIDMAN, | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 31st day of January, 2011, upon consideration of defendants'

partial motion (Doc. 12) to dismiss and motion to strike/motion for more definite

statement, and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that the motion (Doc. 12) is DENIED.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge