# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALICE MASCARINI** : | **CIVIL ACTION NO. 1:10-CV-1546** |
| **Plaintiff** : | |
| : | **(Judge Conner)** |
| v. : | |
| : | |
| **QUALITY EMPLOYMENT SERVICES** : | |
| **& TRAINING (a.k.a. QUEST, INC.),** : | |
| **PENELOPE SAMUELSON, JOSEPH** : | |
| **KRISTOBAK, VERNA MORRIS,** : | |
| **HOLLIE MANWILLER, JOSEPH** : | |
| **HYLTON and MICHAEL WEIDMAN** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

This is a civil action filed by plaintiff Alice Mascarini alleging numerous violations of federal and state law following the termination of her employment with defendant Quality Employment Services and Training (a.k.a. Quest, Inc.).[1] Presently before the court is a motion (Doc. 66) *in limine* filed by defendants Quest, Inc., Penelope Samuelson, Joseph Kristobak,[2] Verna Morris, Hollie Manwiller, and Joseph Hylton. For the reasons that follow, the court will grant the motion.

---

[1] Former plaintiffs Lourdes Costoso, Levi Rambler, Jenna Walters, and Morgan Witman have settled their claims against the defendants. (See Doc. 49, at 1).

[2] In plaintiff's pre-trial memorandum, she declares the withdrawal of all claims against Penelope Samuelson and Joseph Kristobak. (See Doc. 76, at 7).

## I. Background

This case arises out of numerous incidents that occurred between 2007 and 2009 during plaintiff Alice Mascarini's ("Mascarini") employment at Quest. Defendants are Quest, Inc. ("Quest"), a vocational rehabilitation facility that provides employment training at sheltered workshops (Doc. 46 ¶ 4; Doc. 47 ¶ 4); Penelope Samuelson, President or Vice President of the Board; Joseph Kristobak, President of the Board; Verna Morris, Executive Director of Quest; Hollie Manwiller ("Manwiller"), Interim Executive Director or Chief Financial Officer of Quest; Joseph Hylton ("Hylton"), Director of Vocational Services for Quest (collectively referred to as "the Quest defendants"); and Michael Weidman, Maintenance Supervisor for Quest. (Doc. 46 ¶ 5; Doc. 47 ¶ 5).

Plaintiff originally instituted this action in the Court of Common Pleas of Lebanon County. Weidman and the Quest defendants removed the matter to this court on July 26, 2010. (See Doc. 1). Plaintiff Mascarini filed an amended complaint (Doc. 8) on August 27, 2010, alleging nine causes of action: (1) violation of 42 U.S.C. § 1981;[3] (2) violation of Title VII, 42 U.S.C. § 2000e; (3) violation of the Age Discrimination and Employment Act;[4] (4) violation of the Pennsylvania Human

---

[3] The parties have settled this claim.

[4] The parties have settled this claim.

Relations Act ("PHRA"); (5) defamation;[5] (6) assault; (7) intentional infliction of emotional distress; (8) failure to supervise; and (9) wrongful discharge. (Doc. 8).

During discovery, Mascarini inquired into the subsequent employment history of Hollie Manwiller as well as the health history of Joseph Hylton. (Doc. 67, at 1-2). The Quest defendants believe that Mascarini may attempt to introduce evidence that Manwiller was suspended on January 28, 2011 for failing to properly administer employee funds in a 403(b) plan. (See Doc. 67, at 2; Doc. 71-2, Ex. A). The Quest defendants also proffer that Mascarini may attempt to introduce evidence that Hylton sought treatment for depression and substance abuse after he left his position at Quest. (Doc. 67, at 2, 4). The Quest defendants assert that such evidence is inadmissible because it is irrelevant and prejudicial. (Doc. 66). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. Irrelevant evidence is inadmissible. FED. R. EVID. 402. The court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. The exclusion of

---

[5] On November 21, 2012, the court granted summary judgment to defendants on this claim. (Doc. 63).

potentially relevant evidence pursuant to Rule 403 is an "extreme measure" at the pre-trial stage and should rarely be excluded. Hines v. Consol. Rail Corp., 926 F.2d 262, 274 (3d Cir. 1991).

## III. Discussion

Manwiller's suspension and Hylton's treatment for depression and substance abuse are not relevant to Mascarini's claims. To the extent that the evidence is relevant, it is overly prejudicial.

### A. Hollie Manwiller's Subsequent Employment History

The Quest defendants posit that Manwiller's suspension on January 28, 2011 is not relevant to Mascarini's lawsuit. Mascarini is suing Manwiller individually for discrimination under Title VII and the PHRA, intentional infliction of emotional distress, and negligent supervision. Mascarini asserts that Manwiller "was informed, observed and aware of Defendant Weidman's rage, assault and abusive conduct including towards Plaintiff but she failed to act to correct, investigate, report to authorities or stop the abuse and harassment." (Doc. 71-1, at 4). The Quest defendants contend that Manwiller's January, 2011, suspension occurred long after Alice Mascarini left Quest in June, 2009, and that there is no evidence that Manwiller's failure to properly administer employee funds contributed to Mascarini leaving Quest. (Doc. 67, at 2).

In response, Mascarini avers that this evidence is relevant because she was the one to notify Quest of Manwiller's mismanagement in November 2010 and because her retirement funds were mismanaged by Manwiller. (Doc. 71-1, at 3).

4

Mascarini reasons that, under Rule 406, her mismanagement of funds "is proof positive and pattern practice of failed performance as executive management that Quest tolerated." (Doc. 71-1, 4-5).

This evidence is irrelevant. This suit concerns events occurring prior to Mascarini's separation from Quest. The mismanagement of Mascarini's retirement funds by Manwiller after Mascarini's separation and the fact that Mascarini brought this mismanagement to Quest's attention does not make any fact occurring prior to Mascarini's separation from Quest more or less probable. To the extent that Manwiller's suspension is relevant, its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues under Rule 403. There is a danger that the jury will confuse Manwiller's apparent negligence in regards to employee funds with issues relating to Weidman's conduct and alleged failures to supervise Weidman. Additionally, the jury may erroneously believe that the mismanagement of Mascarini's retirements funds is the basis of one of her claims.

Mascarini's reliance on Rule 406 to justify admission of this evidence is also misplaced. Rule 406 states that "evidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit." FED. R. EVID. 406. Mascarini presents no evidence of any habit by Manwiller. Instead, she presents a single event, the January 28, 2011, suspension, and seeks to admit it as circumstantial evidence of Manwiller's mismanagement and negligent supervision of Weidman. Under Rule 404(b), "evidence of a crime,

5

wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b). Mascarini seeks to admit evidence of Manwiller's suspension to show that she was a poor manager and thus, Manwiller must have acted in accordance with her character as a poor manager during Mascarini's employment by failing to correct Weidman's abusive conduct. This evidence is inadmissible.

### B. Joseph Hylton's Health History

The Quest defendants also contend that Hylton's treatment for depression and substance abuse after he left his position at Quest is irrelevant. Mascarini is suing Hylton individually for discrimination under the PHRA as well as for intentional infliction of emotional distress. The court allowed the intentional inflict of distress claim against Hylton to move beyond the motion to dismiss and summary judgment phases on the grounds that there was sufficient evidence to find that Hylton, along with the other Quest defendants, intentionally or recklessly failed to take remedial actions against Weidman's tortious conduct. (Doc. 19, at 21; Doc. 63, at 16).

The Quest defendants assert there is no evidence that Hylton's health issues adversely impacted Mascarini in any way and that Hylton's treatment occurred long after Mascarini left Quest herself. Mascarini responds that Hylton was on leave from work for six weeks during which time Mascarini had to assume his job responsibilities and engage in contact with Weidman. (Doc. 71-1, at 3). Mascarini claims that this particular leave from work stemmed from Hylton's depression and

6

substance abuse, but the evidence Mascarini presents from Hylton's deposition does not support this claim. (See Doc. 71-3, Ex. B). Mascarini also presents evidence that Hylton became drunk and vulgar as a guest in her home and addressed her as a "bitch" in front of her family. (Doc. 71-1, at 4; Doc. 71-4, Ex. C). Additionally, Mascarini contends that Hylton made racist references at work and engaged in obscene sexist name-calling. (Doc. 71-1, at 4).

Hylton's treatment for depression and substance abuse after he left Quest is not relevant to Mascarini's claims and to the extent that it is relevant, it is overly prejudicial. The treatment occurred long after Mascarini left her position at Quest as well as after Hylton left his position at Quest. Admitting such evidence would likely cause the jury to focus on events which occurred after the cause of action accrued, and cause confusion on the central issues and events.

Importantly, the court notes that Mascarini may present evidence that Hylton was drunk when he called her a "bitch" in her home without introducing evidence that, years later, he sought treatment for depression and substance abuse. The intervening events which ultimately led to Hylton's treatment are not relevant to this incident. Moreover, the extremely limited probative value of Hylton's treatment for substance abuse issues after he left Quest is substantially outweighed by the danger of unfair prejudice to the defense who will be forced to make the Hobson's choice of either explaining the subsequent treatment, thereby highlighting its significance, or ignoring the treatment and risking juror speculation of a tenuous connection between events which occurred years apart. Hence the

7

court concludes that evidence of Hylton's treatment for depression and substance abuse after he left Quest is inadmissible.

After making a proffer of the evidence to the court at sidebar, Mascarini may also potentially present any other evidence of Hylton's depression and substance abuse issues that took place during her employment at Quest and may be probative of whether and why Hylton failed to intervene against Weidman's alleged tortious conduct. Mascarini currently presents no evidence that Hylton took leave from work during Mascarini's employment due to depression and substance abuse issues. Similarly, there is no evidence that Hylton's alleged racist and sexist remarks at the workplace were due to any depression or substance abuse on his behalf. Mascarini may freely introduce evidence that Hylton took leave from work and that, as a result, Mascarini had to regularly interact with Weidman. However, the court will defer ruling on whether Mascarini may present evidence of the *nature* of Hylton's leave from work, or any other issues with depression or substance abuse, until an *in limine* proceeding outside the jury's presence. The parties are instructed to refrain from any reference to this evidence in the presence of the jury, including in opening statements, prior to a sidebar conference with the court.

**IV. Conclusion**

For the foregoing reasons, the court will grant the motion in part and deny it in part. An appropriate order follows.

                                                           S/ Christopher C. Conner
                                                         CHRISTOPHER C. CONNER
                                                         United States District Judge

Dated:       February 14, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALICE MASCARINI** | **CIVIL ACTION NO. 1:10-CV-1546** |
| **Plaintiffs** | |
| | **(Judge Conner)** |
| v. | |
| **QUALITY EMPLOYMENT SERVICES & TRAINING (a.k.a. QUEST, INC.), PENELOPE SAMUELSON, JOSEPH KRISTOBAK, VERNA MORRIS, HOLLIE MANWILLER, JOSEPH HYLTON and MICHAEL WEIDMAN,** | |
| **Defendants** | |

## **ORDER**

AND NOW, this 14th day of February, 2013, upon consideration of defendants' motion *in limine* (Doc. 66), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that defendants' motion *in limine* (Doc. 66) is GRANTED in part and DENIED in part:

1. Evidence of Hollie Manwiller's January 28, 2011, suspension is irrelevant and inadmissible.

2. Evidence of Joseph Hylton's treatment for depression and substance abuse issues after he left Quest is irrelevant and inadmissible.

3. The court will defer ruling on whether the parties may present potential evidence of Hylton's depression and substance abuse issues that occurred during Mascarini's employment at Quest until trial. <u>The parties shall refrain from any mention of this evidence</u>, including the potential reasons for Hylton's leave from work, prior to a sidebar conference with the court at trial.

        <u>S/ Christopher C. Conner</u>
       CHRISTOPHER C. CONNER
       United States District Judge